IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | CRIMINAL ACTION NO. H-14-479 |
| v. § | |
| § | CIVIL ACTION NO. H-16-1045 |
| SIMON SHADRACK MAKANGULA § | |

**MEMORANDUM OPINION AND ORDER**

Defendant Simon Shadrack Makangula, represented by counsel, filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (Docket Entry No. 30). The Court ordered the Government to file a response or, if appropriate, a dispositive motion. The Court further ordered Defendant to file a response to any dispositive motion within thirty days after date of filing. (Docket Entry No. 32, p. 2.) This latter order was repeated by the Court in a subsequent order (Docket Entry No. 39, p. 2).

The Government filed a motion for summary judgment on August 10, 2016 (Docket Entry No. 43), and served a copy on counsel for Defendant that same date. Defendant filed a response to the motion on September 22, 2016 (Docket Entry No. 44). The response to the motion was untimely, and Defendant did not seek authorization to file the late response. Defendant was warned that his failure to respond timely to a dispositive motion would "result in dismissal of the section 2255 motion for failure to prosecute or the Court's disposition of the Government's motion without a response from Defendant." (Docket Entry No. 32, p. 2.) Because Defendant did not timely respond to the Government's motion or seek leave to file

his untimely response, the response is not properly before the Court and will not be considered.

Having reviewed Defendant's section 2255 motion, the Government's motion for summary judgment, the record, and the applicable law, the Court GRANTS the motion for summary judgment and DENIES the section 2255 motion for relief, as follows.

## *Background and Claims*

Defendant pleaded guilty to one count of aiding and assisting the filing of a false or fraudulent tax return in violation of 26 U.S.C. § 7206(2). The plea was entered pursuant to a written plea agreement. The plea agreement described the factual basis for Defendant's criminal offense as follows:

> 15. Defendant is pleading guilty because he is guilty of the charges contained in the Criminal Information. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others, would be offered to establish defendant's guilt:
>
> At all times relevant to this case, defendant agrees he was in the business of preparing U.S. Individual Income Tax Returns for clients, operating under the name MSHALE Investment in Houston, Texas. Defendant willfully placed numerous false items on his clients' income tax returns in order to lower his clients' income tax liabilities.
>
> With regard to the specific 2009 U.S. Individual Income Tax Return of LM that defendant prepared and which underlies the Criminal Information, defendant willfully claimed on the return the following false items that defendant knew the taxpayer was not entitled to claim: two false dependents; a false Refundable Education Credit in the amount of $2,000; a false Earned Income Credit of $4,732.00; and a false Schedule C loss of $14,324.00 from a sole proprietorship that defendant knew the taxpayer did not have. These false items that the defendant placed on the return resulted in a falsely claimed

2

income tax refund of $9,010.00, resulting in a tax loss to the United States of approximately $9,731.00.

(Docket Entry No. 12, pp. 11–12.)

At the sentencing hearing held January 23, 2015, the Court sentenced Defendant to 18 months' imprisonment, to be followed by one year of supervised release, and restitution in the amount of $51,645.00. (Docket Entry No. 25, pp. 10–11.)

In the instant section 2255 proceeding, Defendant claims that counsel was ineffective in failing to advise him properly as to the immigration consequences of his guilty plea, as required by *Padilla v. Kentucky*, 559 U.S. 356, 360 (2010). The Government argues that the claim is without merit.

## *Legal Standards*

*Section 2255*

Generally, there are four grounds upon which a defendant may move to vacate, set aside, or correct his sentence pursuant to section 2255: (1) the imposition of a sentence in violation of the Constitution or the laws of the United States; (2) a lack of jurisdiction of the district court that imposed the sentence; (3) the imposition of a sentence in excess of the maximum authorized by law; and (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). Section 2255 is an extraordinary measure, and cannot be used for errors that are not constitutional or jurisdictional if those errors could have been raised on direct appeal. *United States v. Stumpf*,

900 F.2d 842, 845 (5th Cir. 1990). If the error is not of constitutional or jurisdictional magnitude, the movant must show the error could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994).

*Ineffective Assistance of Counsel*

The United States Supreme Court's decision in *Strickland v. Washington* provides the familiar two-pronged test for establishing a claim of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. 668, 687 (1984). In the context of sentencing, the movant must demonstrate a reasonable probability that, but for counsel's errors with respect to sentencing matters, he would have received less time in prison. *United States v. Grammas*, 376 F.3d 433, 438 (5th Cir. 2004).

*Analysis*

The record shows that Defendant is a Tanzanian citizen who has been in the United States since 2001 on various temporary visas and work permits. In 2007, he filed an application for United States residency based on his marriage to a United States citizen.

4

Defendant states he was placed in removal proceedings in 2014, and that he petitioned for immigration benefits as the spouse of a deceased United States citizen in 2015.[1] On March 1, 2016, the Department of Homeland Security moved to terminate his removal proceedings without prejudice because his conviction in this case made him subject to administrative removal under section 238 of the Immigration and Nationality Act. According to Defendant, the immigration judge terminated his immigration proceedings on March 11, 2016.

Defendant argues that defense counsel was ineffective in failing to adhere to the requirements of *Padilla v. Kentucky*, 559 U.S. 356, 360 (2010). In *Padilla*, the Supreme Court held that counsel's failure to advise a lawful permanent resident alien of likely deportation following his guilty plea implicated the Sixth Amendment right to counsel. *Id.* at 367, 369, 373. Where the deportation consequence of a plea is "truly clear," defense counsel has an obligation to give correct advice regarding the removal effect of a conviction; but "[w]hen the law is not succinct or straightforward, a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Id.* at 368–369.

Defendant's burden of proof under *Strickland* is two-fold: he must show that counsel failed to comply with *Padilla*, and that counsel's failure caused him actual prejudice. As to

---

[1] Defendant's pleadings show that his wife died from a traumatic fall at home on November 24, 2014.

the latter, Defendant must demonstrate that, but for counsel's deficient performance, he would have elected to proceed to trial instead of pleading guilty.

*Deficient Performance*

Defendant states in his affidavit that counsel failed to inform him that a guilty plea "would render me to mandatory deportation and subjects [*sic*] me to expedited administrative removal without judicial action." (Docket Entry No. 30-1, p. 1.) He asserts that counsel instead told him he would not be deported because he would receive only a short sentence. He states that, "Had I known the plea and subsequent conviction would subject me to mandatory deportation as an aggravated felon without any relief and to expedited removal without court proceeding, I would have opted to go to trial." *Id.*, p. 2.

In his affidavit filed in response, defense counsel testified that he advised Defendant of the immigration consequences of a guilty plea, and told him that deportation was "a real consequence" upon a finding of guilt. Counsel further stated that Defendant's claims to the contrary were "ludicrous," and that Defendant was well aware of the consequences of a guilty plea or finding of guilt. (Docket Entry No. 40.)

The Court notes that in his written plea agreement signed October 15, 2014, Defendant specifically agreed that

> Defendant recognizes that pleading guilty may have consequences with respect to his immigration status since he is not a citizen of the United States, but of Tanzania. Defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

>Defendant's attorney has advised defendant of the potential immigration consequences resulting from defendant's plea of guilty.

(Docket Entry No. 12, pp. 3–4.) Despite signing the agreement, Defendant now urges that the agreement was incorrect, in that defense counsel did not inform him that his guilty plea would subject him to mandatory deportation.

Although Defendant and defense counsel disagree as to whether counsel complied with *Padilla*, their disagreement is not dispositive of Defendant's ineffective assistance of counsel claim. Assuming for the sake of argument that counsel did not comply with *Padilla*, Defendant must affirmatively establish prejudice – that it, he must demonstrate that, but for counsel's deficiency, he would have elected to proceed to trial in lieu of entering a guilty plea. *See United States v. Wines*, 691 F.3d 599, 604 (5th Cir. 2012) ("To save ink, paper, and time, we will assume without deciding, that Wines' trial counsel performed deficiently, because even assuming Wines' counsel was ineffective, Wines suffered no prejudice").

*Prejudice*

Establishing prejudice in the context of his habeas claim requires Defendant to show a reasonable probability that, "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial," and that proceeding to trial "would have given him a reasonable chance of obtaining a more favorable result." *See United States v. Batamula*, 823 F.3d 237, 240 (5th Cir. 2016). To obtain relief on this type of claim, "a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla*, 559 U.S. at 372. Defendant cannot establish prejudice by

7

asserting he would have gone to trial had he been given different advice by counsel. "The test is objective, not subjective." *Batamula*, 823 F.3d at 240 (quoting *Pilla v. United States*, 668 F.3d 368, 373 (6th Cir. 2012)).

In conducting the prejudice inquiry, this Court must consider "the totality of the circumstances." *United States v. Kayode*, 777 F.3d 719, 725 (5th Cir. 2014). To prevail, Defendant must demonstrate that going to trial under his indictment would have given him a reasonable chance of obtaining a more favorable result. *Id*. The court's prediction as to whether a defendant had a reasonable chance of obtaining a more favorable result should be made objectively, without regard for the "idiosyncrasies of the particular decision-maker." *Strickland*, 466 U.S. at 695.

Defendant acknowledges that removal proceedings were commenced against him in 2014. It appears that the removal proceedings were unrelated to Defendant's plea in the instant case, as on March 1, 2016, the Department of Homeland Security moved to terminate his removal proceedings without prejudice because his conviction in this case made him subject to administrative removal under section 238 of the Immigration and Nationality Act. Consequently, prior to Defendant's plea of guilty in this case, proceedings for his removal from the United States were already underway.

As noted above, this Court specifically informed Defendant that his plea might impact his status in the United States and that he may be deported following his release from prison. (Docket Entry No. 41, p. 11.) Defendant stated on the record that he understood the Court's

admonishment. *Id*. Defendant further acknowledged in his written plea agreement that his plea might result in his removal from the United States.

The Fifth Circuit Court of Appeals has stated that "[w]arnings from a judge during a plea colloquy are not a substitute for effective assistance of counsel, and therefore have no bearing on the first *Strickland* prong." *Kayode*, 777 F.3d at 725; *United States v. Urias-Marrufo*, 744 F.3d 361, 369 (5th Cir. 2014). Nonetheless, the Fifth Circuit further reasoned that the judicial admonishments "are relevant under the second *Strickland* prong in determining whether a defendant was prejudiced by counsel's error." *Kayode* at 728–29. Accordingly, judicial admonishments from the Court stand as one factor that a court may consider in the fact based, totality of the circumstances prejudice analysis.

Defendant does not demonstrate a likelihood of success or of a lower sentence had he proceeded to trial, nor does he show that he would not have faced increased risks by proceeding to trial. *See Kayode* at 725. Had Defendant not pleaded guilty, he would have lost the reduction he received for his guilty plea. Absent that reduction, his total offense level would have increased from 13 to 16 and his guideline range would have increased from 12–18 months to 21–27 months' imprisonment. Moreover, he most likely would have been found guilty of the offense and have received a sentence greater than 18 months. The Court is not persuaded by Defendant's self-serving assertions in his affidavit that someone else in his office used his computer and his EFIN/ERO credentials to finalize a fraudulent tax return for Defendant's client in the instant case. Defendant's story is particularly questionable in

light of his allegations that he asked the client to bring him certain tax documents to finalize her return, but that he never saw her again until "she came to pick up her check." (Docket Entry No. 30, Affidavit, p. 2.) It begs credulity that Defendant never questioned his client's picking up a refund check for a tax return he never finalized.

Moreover, the PSR in this case sets forth evidence of the primary offense in addition to evidence of other criminal conduct by Defendant. The evidence and reported conduct show that Defendant faced increased risks by proceeding to trial and had little likelihood of succeeding. The PSR shows, in relevant part, as follows:

> 5. Simon Makangula came to the attention of the IRS-CI during the interview of Latonya Warren, Simon's wife, who was being investigated on a case involving the theft of her personal identifiers. During the review of Latonya Warren's 2009 and 2010 tax returns, agents identified several false items, including Education Credits and American Opportunity Credits.
>
> 6. The defendant advised agents that his unindicted partner, Felix K. Martin prepared his and his wife's tax return to avoid preparing his own returns. The defendant's wife stated she and her son did not attend college, pay for any schooling, or even know about the Education Credit and American Opportunity Credit reported on her 2010 tax return. She stated she did not pay the $8,000 in qualified expenses reported on her Form 8863 attached to her 2010 Form 1040 and she only provided Martin with a copy of her Form W-2 and dependent information. Agents then reviewed several other client files with the defendant's consent, only to find a similar pattern of claiming false Education and American Opportunity Credits on each return.
>
> 7. It is noted that although there is evidence that the defendant and Martin comingled their returns, only returns that Makangula prepared will be used for tax loss purposes. *It further noted that the agent reviewed a random sampling of 60 tax returns prepared by the defendant and 100% of those returns had false education credits applied. The agent also provided this probation officer a separate group of random tax returns (27 returns), that the civil section of the IRS reviewed, and 100% of those returns also reflected false credits*.

8. Simon Makangula was the sole proprietor of MSHALE Investment & Tax Service, in Houston, Texas. Makangula began to prepare tax returns in 2008, and tax preparation was the only service he provided. Makangula advised agents that he prepared about 60 tax returns for the 2007 tax year, 500 tax returns for the 2008 tax year, 952 tax returns for the 2009 tax year, and 886 tax returns for the 2010 tax year. A number of witnesses stated the business had long lines and included customers of varying ethnicities. According to IRS records, Makangula submitted his application for his Electronic Filing Identification Number (EFIN) on July 17, 2007, and was accepted as an Electronic Return Originator (ERO) on August 31, 2007, and assigned EFIN# 764242.

9. Both the defendant and Martin portrayed themselves as knowledgeable and experienced return preparers working together as a team in the same office. They led their clients to believe that they knew of ways to maximize their tax refunds and relied on client referrals and their reputation to maintain and increase their clientele. Some of their clientele were Burmese refugees, who had recently moved to the United States. They spoke little to no English, and did not understand tax laws. The Burmese witnesses stated they did not understand what was on their tax return and neither the defendant nor Martin reviewed the tax returns with them. *These clients received large refunds averaging $7,500 per year of which $3,000 on average came from fraudulent Education Credits*. Once word got around the Houston-Metro area that the defendant and Martin were able to get their clients such large refunds, clients came from as far as San Antonio, Texas to have their return prepared by them.

10. On August 23, 2011, the defendant advised agents that each of his clients was required to provide all of their documentation to have a tax return prepared. The defendant required new clients to bring everything, but did not require returning clients to show identification or forms. If the client stated he had something at home or had not received it in the mail yet, the defendant accepted that at face value. The defendant stated he knew clients must provide the Form 1098-T from their school, in order to claim credit for payments. Eleven (11) of 12 witnesses stated the defendant did not provide a copy or only provided the first two pages of their Form 1040 and all the witnesses stated the defendant did not review the completed return with them. The defendant charged between $183 and $1,500 for a single, current-year return.

11. The defendant benefited financially, as his name was known around the community as an individual who could get large refunds for his clients. Several

witnesses stated they went to MSHALE to have their 2009 and 2010 Federal Income Tax Returns prepared, because they heard they would receive larger refunds if the defendant prepared their returns. Santa Barbara Tax Products Group (SBTPG), the bank that processed the Refund Anticipation Checks for the defendant, provided records that documented the amount of preparer fees collected by the defendant. Per SBTPG, from 2009 through 2011, the defendant received approximately $358,032 in preparer fees.

(Docket Entry No. 18, pp. 4–5, emphasis added.)

Defendant does not show that he took any legal or other action against the individual who purportedly used Defendant's credentials to finalize the fraudulent tax return in this case. To the contrary, Defendant does not show that he even raised questions when the client returned to pick up a refund check for a tax return Defendant claims to have never finalized. Defendant fails to establish a "reasonable chance" that a rational defendant would have rejected the plea agreement, or that, if he did so, he would have been acquitted at trial or received a lesser sentence. Consequently, he fails to allege and show a rational explanation for his alleged desire to proceed to trial. *Batamula* at 241. He further fails to show that a rational person in his position would have proceeded to trial. *Kayode* at 727. Under the totality of the circumstances, Defendant has not satisfied the prejudice prong of *Strickland*, and no relief is warranted under section 2255.[2]

---

[2]The Court acknowledges that two factors mentioned by the Fifth Circuit in *Kayode* weigh in his favor: he affirmatively stated that he would not have pleaded guilty had he been advised of the "actual" deportation consequences, and he had significant connections to the United States.

Because the Court was able to resolve Defendant's habeas claim utilizing the plea and sentencing records and arguments and evidence presented by the parties in their respective pleadings, as supplemented by this Court's personal knowledge and recollection of the case, an evidentiary hearing on this issue is not required.[3]

### *Conclusion*

The Government's motion for summary judgment (Docket Entry No. 43) is GRANTED. Defendant's section 2255 motion (Docket Entry No. 30) is DENIED. A certificate of appealability is DENIED.

The Clerk of Court is ORDERED TO ADMINISTRATIVELY CLOSE Civil Action No. H-16-1045.

Signed at Houston, Texas on May 31, 2017.

Gray H. Miller
United States District Judge

---

[3] An evidentiary hearing is required on a section 2255 motion unless the motion, files, and record conclusively show that the prisoner is not entitled to relief. *See* 28 U.S.C. § 2255(b); *United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992). It is the prisoner's ultimate burden, however, to sustain his claims by a preponderance of the evidence. *United States v. Bondurant*, 689 F.2d 1246, 1251 (5th Cir. 1982). Accordingly, if there is no "independent indicia" of the likely merit of the allegations made in the motion, a hearing is not required. *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006).